# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CEI WASHINGTON BUREAU INC., )
                               )
        **Plaintiff,**          )
                               )
        **v.**                      )     **Civ. No. 03-2651 (RJL)**
                               )
**UNITED STATES OF AMERICA**   )
**DEPARTMENT OF JUSTICE,**      )
                               )
        **Defendant.**       )

## MEMORANDUM OPINION
(September **27**, 2005) [# 11, 13]

This action concerns a request by plaintiff, CEI Washington Bureau, Inc. ("CEI"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for certain personal information contained in an electronic database, administered by the Bureau of Justice Assistance ("BJA"),[1] in conjunction with a federal program, the State Criminal Alien Assistance Program ("SCAAP"), which provides payments to states and localities for incarcerating undocumented criminal aliens.  Presently before the Court are cross-motions for summary judgment.  The Department of Justice ("DOJ") moves for summary judgment on the grounds that it has released all responsive information, except for that being withheld under a valid claim of exemption.  CEI cross-moves for summary judgment seeking the information withheld by DOJ under FOIA exemptions 6 and 7(c).

---

[1]     BJA is a component of the Office of Justice Programs ("OJP"), which is a bureau of the Department of Justice.  Def.'s Mot. for Summ. J. 2 n.2.

1



For the following reasons, the Court GRANTS the defendant's motion for summary

judgment and DENIES the plaintiff's cross-motion for summary judgment.

## BACKGROUND

SCAAP provides a means for the Federal Government to provide payments to

states and localities that have incurred correctional officer salary costs for incarcerating

certain undocumented criminal aliens. Def.'s Mot. for Summ. J. 2.  To receive a payment

through SCAAP, state and local agencies must submit applicant profile information and

satisfy certain reporting requirements. *Id.* 2-3.  The program requires that the states and

localities submit data regarding the number of correctional officers the incarceration

facilities employ and the salaries that they are paid. *Id.* 3.  The states and localities must

also provide information relating to the inmates that they incarcerated during certain

reporting periods. *Id.*  The SCAAP application includes, but is not limited to, the

following datafields for each inmate:  A-number (if known)[2]; Names (last, first, and

middle name); Date of Birth; Unique inmate identifier; Foreign country of birth; date

taken into custody; date released, or to be released, from custody; and FBI number (if

available). *Id.* 3; Pl.'s Cross-Mot. for Summ. J. 5.  Applicants submit information about

inmates through either a "direct file upload" of inmate data through the BJA's online

Grants Management System ("GMS"), or by manually entering inmate data into an online

template linked to GMS.  Def.'s Mot. Summ. J. 3.  SCAAP payments are computed based

---

[2]     "A-number" is an alien registration number used by the Bureau of Immigration and
Customs Enforcement ("ICE").

on payment formulas that ensure that each applicant receives a relative share of funding based on the eligibility of the inmates referenced in the GMS application. *Id.* 4.

On September 12, 2003, CEI submitted a FOIA request to the BJA seeking "access to and copies of all records maintained on alien inmates in the GMS, including, without limitation, all records relating to the State Criminal Alien Assistance Program." *See* Ex. A to Lee Decl.   The request was nearly identical to a FOIA request submitted by CEI less than a year earlier in November 2002. Lee Decl. ¶ 11. Dorothy Lee, a legal technician at the BJA, processed both requests and identified the specific information CEI requested. Def.'s Mot. Summ. J. 4.  Because of its previous determination that the inmate records sought should be withheld under FOIA Exemptions (b)(2), (b)(6) and (b)(7)(c), the records were once again withheld.[3] Lee Decl. 5.  On November 6, 2003, CEI appealed the decision to the DOJ's Office of Information and Privacy ("OIP").  OIP, however, failed to process the appeal within the 20-day statutory period. Pl.'s Cross-Mot. Summ. J. 9.  As a result, CEI filed this suit on December 30, 2003. *Id.*

A few months after CEI filed its suit, OJP decided to release information contained in four of the requested 10 SCAAP datafields, as well as non-inmate information related to the jurisdictions that had sought SCAAP funding in CD-ROM format.[4] Def.'s Mot. for Summ. J. 5-6; Pl.'s Cross-Mot. for Summ. J. 9.  Overall, the text files on the CD-ROM

---

[3]    OJP no longer maintains Exemption 2 as a basis for withholding the information sought by CEI. Def.'s Mot. for Summ. J. 5 n.6.

[4]    The four releaseable datafields are: (1) foreign country of birth; (2) date taken into custody; (3) date released from custody; and (4) unique inmate number. Def.'s Mot. Summ. J. 6.

released to CEI provided information from more than 1,750,000 inmate records. *Lee Decl.* ¶ 20. The BJA has also provided CEI with additional information on the CD-ROM that was not originally requested, as well as information in print form. *Id.* 6-7.

## DISCUSSION

### I.    *Standard of Review*

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that he moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(c), (e)). The court must view the facts in the light most favorable to the non-movant, giving the non-movant the benefit of all justifiable inferences derived from the evidence in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In this case, where cross-motions for summary judgment are at issue, the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party. *Flynn v. Dick Corp.*, 2005 WL 1904018, *2

4

(July 29, 2005 D.D.C.).  The Court will "grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed."  *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 2005 WL 1773851, *2 (July 28, 2005 D.D.C.).

In a FOIA case, summary judgment can be granted for an agency or office based only on agency affidavits "if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984).  It is BJA's burden to establish that any exemption from disclosure applies.  5 U.S.C. § 552(a)(4)(B).  However, the Court is to accord "substantial weight" to a department's affidavit concerning the details of the classified status of a disputed record.  *Casey*, 656 F.2d at 738.

## II.   *Adequacy of the BJA's Search*

Before addressing the applicability of FOIA exemptions, the Court must first assess whether the BJA's search for responsive documents was adequate.  While there is no requirement that an office search every record system in response to a FOIA request, *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986), an office must search records systems in which it is likely to find responsive records, *Oglesby v. U.S. Dep't of The Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The government is entitled to summary

5

judgment on the adequacy of its search if it can show that it made a good faith effort to conduct the search, using methods that could reasonably be expected to produce the information requested. *Id.* (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). While CEI has not raised the issue of the adequacy of BJA's search for the information requested, the Court must consider the issue *sua sponte*. Having done so, the Court concludes based on the declaration provided by Ms. Lee that the BJA has performed an adequate search for the documents requested by CEI. Lee Decl. ¶ 12.

### III.    *FOIA Exemptions Invoked by the Department of Justice*

Turning next to the FOIA exemptions claimed, the BJA has moved for summary judgment on the grounds that the withheld information requested by CEI is exempted from disclosure under FOIA Exemptions (b)(6) and (b)(7)(C). The six datafields that have been withheld under these exemptions are:  (1) alien  identifier, or "A-number", if known; (2) last name; (3) first name; (4) middle name; (5) date of birth, and; (6) FBI number, if known. Def.'s Mot. Summ. J. 7. For the following reasons, these exemptions were appropriately relied upon by BJA.

#### A.    Exemption (b)(6)

Exemption (b)(6) provides that "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" may be exempted from disclosure under FOIA.  5 U.S.C. § 552(b)(6). With regard to the meaning of the term "similar files," the Supreme Court has stated that Exemption 6 was "intended to cover detailed Government records on an individual which can be identified

6

as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (citing H.R. Rep. No. 1497). When invoking Exemption 6, the office withholding the information "must show that the information applies to a particular individual and is thus personal in nature." *Davy v. Cent. Intelligence Agency*, 357 F. Supp. 2d 76, 87 (D.D.C. 2004); *see New York Times Co. v. NASA*, 852 F.2d 602, 606 (D.C. Cir. 1988). Once an office has shown that the information applies to a particular individual, the Court must then strike a "proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information . . . ." *Id.* at 599. If a document invades a third party's privacy, and does not contain "official information" shedding light on government functions, it may be withheld under Exemption 6. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989).

CEI does not dispute that the SCAAP electronic database clearly constitutes a "similar file" as broadly defined by the United States Supreme Court in *Washington Post*, 456 U.S. at 600-01. Pl.'s Cross-Mot. for Summ. J. 17 n.19. The information withheld is also clearly personal information, as it directly "applies to a particular individual." 456 U.S. at 602. Having established these two aspects of Exemption 6, the next step in determining whether the information can properly be withheld is to balance the individual's right to privacy and the public's interest in disclosure of the information. *See United States Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). In balancing these two interests, it is important to recall that the primary purpose of Exemption 6 is to

7

"protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."

CEI contends that the disclosure of the information concerning the incarcerated, or formerly incarcerated, alien criminals (their first, middle, and last names, their dates of birth, their A-numbers, and their FBI numbers), will help in the public's overseeing and evaluating of SCAAP and Institutional Removal Programs and help determine whether Governmental agencies are effectively communicating with each other in the management of the incarceration and removal of criminal aliens. Pl.'s Cross-Mot. Summ. J. 25-26. CEI also contends that the public benefit of governmental oversight in this instance outweighs the privacy interests of those individuals listed in the SCAAP electronic database. I disagree.

In determining whether the individuals' names and dates of birth were properly withheld, it is important to note that our Circuit Court has recognized a significant privacy interest in the unlimited disclosure of one's name or other information that identifies an individual. *Reed v. Nat'l Labor Relations Bd.*, 927 F.2d 1249, 1251 (D.C. Cir. 1991); *Nat'l Assoc. of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). Indeed a district court in this Circuit has also found that one's date of birth to be the type of information protected by Exemption 6, *see Judicial Watch, Inc. v. United States Dep't of Commerce*, 83 F. Supp.2d 105, 112 (D.D.C. 1999), because, in essence, "there is a substantial probability that disclosure will cause an interference with personal privacy." *Horner*, 879 F.2d at 875-78. I agree and find that these privacy interests, and

the privacy intrusion associated with disclosing this information, clearly outweighs the

public disclosure of this information.  Therefore, this information was properly withheld

under Exemption 6.

As to the individuals' A-numbers and FBI numbers, it is obvious that these

numbers link individuals to files that may contain highly personal and sensitive

information as determined by Ms. Lee in her research in determining whether or not to

disclose the information to CEI.  Lee Decl. ¶ 25-26.  Even though one may have to take

additional steps to link these numbers to an individual's identity, Exemption 6 analysis

leads this Court to find that these numbers are a substantial personal privacy interest.  *See*

*Horner*, 879 F.2d at 875-78.  The interference with the privacy interest associated with

the disclosure of these two numbers outweighs the public interest reasons for disclosure

as put forth by CEI.  Therefore, this information was also properly withheld under

Exemption 6.

### B.      Exemption (b)(7)(C)

Exemption (b)(7)(C) exempts from disclosure "records or information compiled

for law enforcement purposes, but only to the extent that the production of such law

enforcement records or information…could reasonably be expected to constitute an

unwarranted invasion of personal privacy."  For records to constitute records "compiled

for law enforcement purposes," and thus qualify for exemption under Exemption (b)(7),

the records must meet two criteria:  1) the activity that gave rise to the documents must be

related to enforcement of federal laws or maintenance of national security; and 2) the

9

nexus between the activity and "one of the agency's law enforcement duties must be based on information sufficient to support at least a 'colorable claim' of rationality." *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982); *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 440 (D.C. Cir. 1987). In asserting this exemption, the BJA is required to balance the nature of the privacy interest with the public interest in disclosure. *Albuquerque Publ'g Co. v. U.S. Dept. of Justice*, 726 F. Supp. 851, 855 (D.D.C. 1989). In this regard, our Circuit Court has stated that "'[e]xemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity.'" *Computer Professionals for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897, 904 (D.C. Cir. 1996) (quoting *Dunkelberger v. U.S. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990)). Our Circuit Court also has found that there is a considerable stigma inherent in being associated with law enforcement proceedings, and therefore, courts should not "require a balance titled emphatically in favor of disclosure" when weighing the privacy interest against the public interest in disclosure. *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981).

Here, with respect to the individuals' A-numbers and FBI numbers, CEI does not even attempt to make the argument that either are *not* records or information "compiled for law enforcement purposes." And, BJA has equivocally established that they are through Ms. Lee's declaration. Lee Decl. ¶ 25-26. Thus, turning to the balancing test, this Court agrees with the BJA that the privacy interest that the individuals maintain in

10

these numbers far outweighs the public interest that might be served by disclosing this information to CEI.  Moreover, this Court would also note that since "Exemption 7(c) is more protective than Exemption 6," *Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6, it is logical that these numbers, already ruled as exempt from disclosure under Exemption 6, should be permitted to be withheld pursuant to Exemption 7(c).  Thus, the Court finds that the numbers were also properly withheld under Exemption 7(c).

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's cross-motion for summary judgment.  An Order consistent with this ruling accompanies this Memorandum Opinion.


RICHARD N. LEON
United States District Judge